921 So.2d 450 (2005)
Ex parte State of Alabama.
In re Carl Ray McCOO
v.
STATE of Alabama.
1031852.
Supreme Court of Alabama.
April 29, 2005.
*452 Troy King, atty. gen., and Michael B. Billingsley, Stephanie N. Morman, and Corey L. Maze, asst. attys. gen., for petitioner.
Marion Chartoff, Montgomery, for respondent.
HARWOOD, Justice.
On December 16, 2004, this Court granted the State's petition for a writ of certiorari to review the opinion of the Court of Criminal Appeals in McCoo v. State, 921 So.2d 446 (Ala.Crim.App.2004). In McCoo, the Court of Criminal Appeals remanded the case for the trial court to enter a probation-revocation order that complied with Wyatt v. State, 608 So.2d 762 (Ala. 1992). We granted the State's petition with respect to three issues: (1) whether and under what circumstances this Court should consider petitions for the writ of certiorari seeking review of an order of remand by the Court of Criminal Appeals, as in Bishop v. State, 608 So.2d 345 (Ala. 1992); (2) whether this Court should overrule the requirement in Wyatt "`that the trial court must issue a written order stating the reasons for the revocation and the evidence it relied upon, even where the transcript of the proceeding, coupled with the order, indicates the evidence relied upon by the trial court and the trial court's reason for the revocation,'" McCoo, 921 So.2d at 449-50 (quoting Wyatt, 608 So.2d at 763); and (3) whether an appellate court of this State should review an allegation of a due-process violation when redressing the violation cannot afford the aggrieved party any relief. On March 1, 2005, the Court heard oral argument on these issues.
In the case before us, Carl Ray McCoo entered a plea of guilty on August 22, 2001, to the charge of conspiracy to commit robbery in the first degree. He was sentenced to 10 years' imprisonment, but that sentence was "split,"[1] and McCoo was ordered to serve 3 years' imprisonment followed by 3 years' probation. On May 22, 2003, McCoo was brought before the trial court; the remainder of his period of incarceration was suspended; and he was placed on probation until May 22, 2006. On December 9, 2003, McCoo again appeared before the trial court in a delinquency hearing arising from his arrest on a charge of robbery in the first degree, a violation of Ala.Code 1975, § 13A-8-41. He was advised by the court that he was charged with having violated the conditions of his probation by committing that offense. McCoo was adjudged delinquent, an attorney appointed to represent him, and a probation-revocation hearing scheduled. On December 17, 2003, the probation-revocation hearing was conducted, and on that same day the trial court revoked McCoo's probation and reinstated his 10-year sentence.
McCoo appealed his probation revocation to the Court of Criminal Appeals, arguing that the trial court's revocation of his probation was erroneous because, he said, it was based entirely on hearsay evidence; McCoo also argued that he was entitled to a written order adequately explaining the evidence the trial court relied on in revoking his probation and the reasons *453 his probation was revoked. The Court of Criminal Appeals summarized the facts adduced at the probation-revocation hearing as follows:
"Detective W.D. Favor with the Montgomery Police Department testified at the hearing. Det. Favor stated that he responded to a robbery-in-progress call at the Pace Car gasoline station on Troy Highway in Montgomery on November 6, 2003. According to Det. Favor, when he arrived at the scene, he spoke with two witnesses and the clerk of the store, and he determined that two black males had entered the Pace Car, had pointed a gun at the clerk, had removed the cash drawer, and had fled. The clerk testified that one of the men had `white paste all over his face, a red jacket and [was] armed with a dark handgun.' Det. Favor related that the witnesses informed him that the two robbers, along with two other men, left the scene in a blue Cadillac automobile. The Cadillac was later stopped by other police units, and McCoo and his accomplice jumped from the car and took off running. When McCoo was apprehended he was found to have Noxzema brand cold cream on his face and an open can of Noxzema was found in the backseat of the Cadillac. The cash box from the Pace Car was also found in the car. The delinquency report, prepared by McCoo's probation officer, Ruth Peters, revealed that McCoo was identified as being the robber who had a gun and who pointed it at the clerk; it also revealed that a gun was found near where McCoo was seen running when police attempted to apprehend him. McCoo did not object to the testimony, and he presented no evidence in his own behalf. The trial court informed McCoo that his probation was being revoked and informed McCoo that he had the right to appeal. Following the hearing, the trial court entered an order on the docket stating:
"`Defendant appeared before the Court for revocation hearing with [his] attorney Jim Porter. Defendant denies [the] charged violation of probation that he has a new offense for Robbery First Degree. Based on sworn testimony of Detective W.D. Favor of [the] Montgomery Police Department which substantiates details of [the] offense contained in the delinquency report, the Court finds [that] the Defendant has violated conditions of [his] probation by failing to refrain from illegal activity.'"
921 So.2d at 447-48.
The Court of Criminal Appeals first determined that McCoo had failed to present to the trial court his argument that that court had improperly considered hearsay evidence at the probation-revocation hearing and therefore concluded that that argument had not been preserved for appellate review.
With respect to McCoo's argument concerning the adequacy of the revocation order, the Court of Criminal Appeals stated:
"As for McCoo's challenge to the adequacy of the revocation order, this issue may be raised on appeal, even if not first presented to the trial court. McCoo cites Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Armstrong v. State, 294 Ala. 100, 312 So.2d 620 (1975); Wyatt v. State, 608 So.2d 762 (Ala.1992); and other authority in support of his argument that the trial court's order was inadequate.
"`"In accordance with Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), Armstrong v. State, 294 Ala. 100, 312 So.2d 620 *454 (1975), and Wyatt v. State, 608 So.2d 762 (Ala.1992), before probation can be revoked, an Alabama trial court must provide a written order stating the evidence and the reasons relied upon to revoke probation." Trice v. State, 707 So.2d 294, 295 (Ala.Crim. App.1997). "These requirements offer the probationer some protection from an abuse of discretion by the trial court, aid an appellate court in reviewing a revocation, and prevent future revocations based on the same conduct." T.H.B. v. State, 649 So.2d 1323, 1324 (Ala.Cr.App.1994).'
"Chenault v. State, 777 So.2d 314, 316-17 (Ala.Crim.App.2000). Rule 27.6(d)(1), Ala. R.Crim. P., states:
"`The judge must be reasonably satisfied from the evidence that a violation of the conditions or regulations of probation or the instructions occurred. Each party shall have the right to present evidence and the right to confront and to cross-examine adverse witnesses who appear and testify in person. The court may receive any reliable, relevant evidence not legally privileged, including hearsay.'
"Rule 27.6(f) states: `The judge shall make a written statement or state for the record the evidence relied upon and the reasons for revoking probation.'
"In James v. State, 729 So.2d 364 (Ala.Crim.App.1998), the trial court revoked the appellant's probation because he had violated four conditions of his probation. The trial court stated in its revocation order that it considered the "`testimony and arguments of counsel [and] adjudged the defendant guilty"' of being in violation of the terms of his probation. James, 729 So.2d at 365. In remanding the case, we wrote:
"`In order for the due process requirements set forth in Armstrong [v. State, 294 Ala. 100, 312 So.2d 620 (1975),] and Rule 27.6(f), Ala. R.Crim. P., to be met, the trial court's order revoking probation must be in writing and must recite the reasons for the revocation and the evidence relied upon in ordering the revocation. Wyatt [v. State], 608 So.2d [762] at 763 [(Ala.1992)]. Here, although the trial court's written order adequately recites the reasons for revoking the appellant's probation, the order fails to adequately specify the evidence it relied upon. We have consistently found general recitations by the trial court to its consideration of the "testimony," "sworn testimony," or "relevant and competent evidence" presented at the revocation hearing to be insufficient for purposes of satisfying the "statement of the evidence relied upon" requirement of Armstrong. See McCloud v. State, [736] So.2d [1131] (Ala.Cr.App.1998); Thornton v. State, 728 So.2d 1162 (Ala.Cr.App.1998); Scarbrough v. State, 709 So.2d 82 (Ala.Cr.App.1997); and Hairgrove v. State, 668 So.2d 887 (Ala.Cr.App. 1995). Thus, the trial court failed to adequately specify the evidence relied upon in revoking the appellant's probation by stating only that it had "heard testimony and arguments of counsel."
"`Although the transcript of the probation revocation hearing presents evidence that supports the court's order revoking the appellant's probation, the Alabama Supreme Court held in Wyatt that the trial court must issue a written order stating the reasons for the revocation and the evidence it relied upon, even where "the transcript of the proceeding, coupled with the order, indicates the evidence relied upon by the trial court and the *455 trial court's reason for the revocation." [Wyatt,] 608 So.2d at 763.'
"James, 729 So.2d at 365-66.
"In this case, the trial court stated that it relied upon the testimony of the police detective and revoked McCoo's probation because of McCoo's failure `to refrain from illegal activity.' These general statements do not go far enough to satisfy the due-process requirements previously established. See Coleman v. State, 777 So.2d 311 (Ala.Crim.App.2000) (case remanded where the trial court stated in its revocation order that it relied upon the police officer's testimony but did not state the reason for the revocation); McCloud v. State, 736 So.2d 1131, 1133 (Ala.Crim.App.1998) (trial court's order that stated, `"[u]pon hearing testimony [the] court finds substantial evidence that [Defendant] has committed [the] offense of harassment [and] probation is revoked,"' did not satisfy the `evidence' requirement of Rule 27.6(f)).
"Because the revocation order in this case falls short of the due-process requirements of Gagnon, Morrissey, Wyatt, Armstrong, and their progeny, we remand this case with instructions that the circuit court enter a written order setting forth the specific reasons it revoked McCoo's probation and the specific evidence upon which it relied in doing so."
921 So.2d at 448-50.
The central premise of the State's argument in this case is that the due-process requirements imposed on the trial court by the Court of Criminal Appeals in reliance on Wyatt are unnecessarily cumbersome and redundant for the purpose of meeting the due-process requirements of Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). However, before we can address this issue, we must first consider whether it is properly before us. Specifically, because the order by the Court of Criminal Appeals in the instant case merely remands the cause for the entry of a more detailed probation-revocation order by the trial court, it is arguably not a final order. In Wyatt, as in the instant case, the Court was presented with a petition for certiorari to review an order of the Court of Criminal Appeals remanding that case for the trial court to enter a written order setting forth the evidence relied upon in, and the reasons for, revoking probation. The Court in Wyatt, without citing authority, stated: "The State's petition, however, is premature in that the Court of Criminal Appeals has yet to issue a final judgment; therefore, we are compelled to dismiss the petition." 608 So.2d at 762. The Court in Wyatt went on, in what, given the disposition in that case, was dicta, to set out the analysis now employed by the Court of Criminal Appeals to support its holding in this case.
Although the Court in Wyatt cited no legal authority for its dismissal of the petition and the rule governing certiorari review  Rule 39, Ala.R.App.P.  states only that petitions will be considered "from decisions," we recognize, as we did in Bishop, supra, "that this Court has held that the provisions of Rule 39 are inapplicable until there has been a final decision in the Court of Criminal Appeals...." 608 So.2d at 347.[2] However, in Bishop the Court *456 determined that the final-decision requirement was inapplicable, and Bishop is asserted by the State as precedential support for its argument that this Court should disregard that requirement in this case. In Bishop, the Court of Criminal Appeals determined that the trial court's summary dismissal of the defendant's postconviction petition was improper, and it remanded the cause to the trial court to require a response from the State to the defendant's petition. The State filed an application for a rehearing, which the Court of Criminal Appeals denied on the basis that it was from an "intervening remand," and the State sought certiorari review from this Court. After recognizing the "final decision" requirement for certiorari review noted above, the Court in Bishop held that the requirement was inapplicable in that case based on the following rationale:
"In Ex parte Pierce, 576 So.2d 258 (Ala.1991), the petitioner (Pierce) was convicted of intentional murder and was sentenced to death. The Court of Criminal Appeals affirmed the conviction, but remanded the case for a new sentencing hearing on the ground that the admission of a victim impact statement during Pierce's sentencing hearing violated his Eighth Amendment rights.
"Pierce asked this Court to review the decision of the Court of Criminal Appeals, pursuant to the provisions of Rule 39(c)[,] Ala.R.App.P., which requires this Court to grant certiorari petitions in cases in which a sentence of death is imposed,[[3]] as a matter of right. In deciding whether the Court of Criminal Appeals' affirmance of the petitioner's conviction constituted a `decision' within the meaning of Rule 39, Ala.R.App.P., this Court stated:
"`We could construe the word "decisions" in Rule 39 broadly to apply to a ruling, such as the one in this case, that affirmed the petitioner's conviction, but we believe that we should construe the word more strictly to apply only to those rulings that finally adjudicate all the issues pending in the court of appeals.'
"We denied Pierce's petition as premature because the Court of Criminal Appeals, even though it had affirmed Pierce's conviction, had not yet affirmed his sentence of death; thus, an issue still remained for that court to resolve concerning Pierce's sentence.
"In the present case, the Court of Criminal Appeals has determined, as a matter of law, that Bishop's Rule 32 petition was not precluded unless and until the State responded to it and sustained its burden of showing that it was precluded. In short, a majority of that Court has determined that the provisions of Rule 32, Ala.R.Cr.P., prohibit the dismissal of a petition, in every case, unless the State has responded to the petition and proved any alleged ground of preclusion. Consequently, the decision *457 is a final decision as contemplated by the provisions of Rule 39, Ala. R.App.P. We, therefore, reverse the judgment of the Court of Criminal Appeals, and we remand the cause to that Court for further proceedings consistent with this opinion."
608 So.2d at 347.
Thus, in Bishop, the Court held that the final-decision requirement had been satisfied because the Court of Criminal Appeals had set out a particular holding that was applicable to all cases as a matter of legal principle, i.e., that no petition for postconviction relief could be summarily dismissed by the trial court before the State responded to the petition. The rationale of Bishop does not support an exception to the final-decision requirement in this case. In this case, the question is the sufficiency of the trial court's probation-revocation order for due-process purposes based on the facts of this particular case. Unlike the situation in Bishop, in which the remand was for further proceedings requiring an additional response by the State, in this case the trial court on remand might simply restate its probation order on evidence that is already before it. In effect, the remand order in this case is saying that the trial court's probation-revocation order must be completed before it can be reviewed on appeal, whereas in Bishop the trial court's order was complete and reviewable, but, according to the Court of Criminal Appeals, incorrect.
The fact that the holding in Bishop does not support disregarding the final-decision requirement under the circumstances of this case does not, however, prevent us from considering the issue under another exception. Specifically, the State points to the fact, as exemplified by at least 25 cases issued since September 2002 that have ordered remands based upon the requirements in Wyatt,[4] that upon remand the trial court will presumably issue a rewritten and sufficient revocation order that, on return from remand, the Court of Criminals Appeals will likely affirm without an opinion, given that only the sufficiency of the probation-revocation order was at issue. Because the State will then have prevailed upon appeal, it will have no basis for obtaining a rehearing, a prerequisite for certiorari review under Rule 39(c)(1), Ala.R.App.P., nor will it have available any ground to support certiorari review under Rule 39(a). Thus, by prevailing on appeal, the State would lose any opportunity to obtain this Court's review of the holding in the Court of Criminal Appeals based upon Wyatt; the trial court's rewritten probation order on remand in compliance with Wyatt will render *458 any subsequent challenge to Wyatt moot. That is, under the mootness doctrine, the validity of the procedure established by Wyatt would be reduced to "an abstract question which does not rest on existing facts or rights." State ex rel. Eagerton v. Corwin, 359 So.2d 767, 769 (Ala.1977). The issue would no longer be one arising from an existing controversy and would not be justiciable. Eagerton, supra. See also Cherry v. State, [Ms. CR-02-0374, Dec. 17, 2004] ___ So.2d ___ (Ala.Crim. App.2004), Auburn Med. Ctr., Inc. v. Alabama State Health Planning & Dev. Agency, 848 So.2d 269 (Ala.Civ.App.2002), and 13A Charles A. Wright et al., Federal Practice & Procedure § 3533, at 211 (2d ed. 1984). However, this Court has long recognized an exception to the mootness doctrine in a situation where the controversy involves an important issue that is "capable of repetition but evading review." Griggs v. Bennett, 710 So.2d 411, 412 n. 4 (Ala.1998); Ex parte Birmingham News Co., 624 So.2d 1117 (Ala.Crim.App.1993); and State ex rel. Kernells v. Ezell, 291 Ala. 440, 282 So.2d 266, 270 (1973).
The capable-of-repetition-but-evading-review exception has been applied in contexts that generally involve a significant issue that cannot be addressed by a reviewing court because of some intervening factual circumstance, most often that the issue will be resolved by the passage of a relatively brief period of time. See, e.g., Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)(involving the termination of a pregnancy); Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969)(involving challenges to election procedures after the completion of the election); and Kernells, supra (same). The exception has also been applied in situations roughly analogous to the instant case, where the action of the trial court effectively renders an underlying issue moot. For example, in Ex parte Birmingham News, supra, various news media companies petitioned the Court of Criminal Appeals for an order requiring the trial court to open to the press its pretrial proceedings in the criminal prosecution of the then governor. The Court of Criminal Appeals subsequently ordered the trial court to disclose specified documents, and the trial court "entered an order releasing most of the court records and the hearing transcripts previously ordered sealed." 624 So.2d at 1123. However, the Court of Criminal Appeals noted that "[c]ontrary to the direction of this Court, the trial court did not `prepare specific and detailed written findings with regard to each portion of the prior proceedings or court file which the Circuit Court orders shall remain closed or sealed.'" Id. (quoting its earlier order to the trial court requiring the disclosure of pretrial documents). The petitioners reasserted their claims in their petition for the writ of mandamus, arguing that the trial court had failed to comply with the order of the Court of Criminal Appeals. This argument did not reach the Court of Criminal Appeals until after the governor's trial had been concluded.
In addressing whether the conclusion of the trial had rendered moot the arguments on the petition for a writ of mandamus, the Court of Criminal Appeals stated:
"Although Governor Hunt's trial began on April 12, 1993, and concluded on April 22 when the jury returned a guilty verdict, the petition for writ of mandamus is not rendered moot by either the conclusion of the trial or the circuit court's release of the bulk of the previously sealed records and transcripts. The relief sought by the petition has not been granted in its entirety. Compare Continental Oil Co. v. Williams, 370 So.2d 953, 955 (Ala.1979) (`[s]ince [petitioner] has received the relief it requested, albeit from the [trial judge] rather *459 than th[e Supreme] Court, the petition for mandamus is moot'). Additionally, the circuit court's order requiring portions of the records and transcripts to remain sealed extends beyond the completion of the trial. Consequently, there is still an issue requiring decision and action by this Court. See Ex parte Higgins, 434 So.2d 1376, 1378 (Ala.1983). Furthermore, even had all the relief sought by Petitioners been granted, `this controversy is "`capable of repetition, yet evading review.'" It can reasonably be assumed that [P]etitioner[s] will be subjected to a similar closure order and, because criminal proceedings are typically of short duration, such an order will likely evade review.' Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 6, 106 S.Ct. 2735, 2739, 92 L.Ed.2d 1 (1986). Under these circumstances, this `case is not moot.' Id. `The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.' Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976)."
624 So.2d at 1123.
Although the issue in this case  the waste of judicial time and resources caused by unnecessary remands  is perhaps not so significant a loss as the negative effect on First Amendment rights implicated in Birmingham News, it is nonetheless a significant issue, particularly in light of the attendant diversion of judicial resources. It is empirically predictable (see note 4) that, if the problem occasioning the cycle of remands is not at some point addressed substantively, it will likely continue to burden the workload of trial and appellate courts alike. Accordingly, we conclude that it is appropriate to address the validity of the requirement in Wyatt that the trial court's written probation-revocation order must state its reasons for the probation revocation and the evidence it relied upon, regardless of whether that order would be duplicative of statements on the record by the trial judge, as unmistakenly clarified by facts readily evident in the record.
At the outset, we take note of the fact that Rule 27.6(f), Ala. R.Crim. P., provides that if a judge revokes probation, he or she "shall make a written statement or state for the record the evidence relied upon and the reasons for revoking probation." Moreover, we recognize that the Court of Criminal Appeals has several times explained in its opinions that the procedures in Wyatt are probably not essential to satisfy the federal constitutional due-process requirements of Gagnon and Morrissey. For example, in Trice v. State, 707 So.2d 294 (Ala.Crim.App.1997), the Court of Criminal Appeals held that "a written order revoking probation is sufficient when it recites that the probationer's confession is the evidence relied upon and recites sufficient reasons for the revocation," 707 So.2d at 297, thus satisfying the requirements of Wyatt. However, the court went on to invite this Court to consider the implications of Wyatt and its progeny:
"The order in this case states that the reasons for revoking Trice's probation are his failure to pay the costs as ordered and the commission of new criminal violations. These are sufficient reasons upon which to base a revocation of probation. The confession pretermits the need for any discussion concerning Trice's ability to pay costs. Also, the issue regarding the trial court's failure to ascertain whether Trice could pay costs was not preserved for review.
"From the record before us, it appears that Trice admitted that he violated the terms of his probation; therefore, his probation was properly revoked. We hold that the written order containing *460 the evidence and the reasons relied upon to revoke probation was adequate.
"Although we are affirming the revocation of probation, holding that the written order revoking probation satisfies due process, we respectfully invite the Alabama Supreme Court to reconsider its holdings in Armstrong v. State, 294 Ala. 100, 312 So.2d 620 (1975), and Wyatt v. State, 608 So.2d 762 (Ala.1992), requiring a separate written order setting forth the evidence relied upon and the reason for the revocation in cases not involving confessions, and instead follow Alabama Rule 27.6(f), Ala.R.Crim. P., and those jurisdictions that permit a statement on the record from the proceedings to provide the evidence relied on and the reasons for revoking probation. In Armstrong and Wyatt, the Alabama Supreme Court relied on Morrissey [v. Brewer, 408 U.S. 471 (1972),] and Gagnon [v. Scarpelli, 411 U.S. 778 (1973)].
"In Morrissey the United States Supreme Court outlined the procedures necessary to protect a parolee faced with revocation of parole. These due process procedures included providing the parolee with a written statement by the factfinder of the evidence relied on and the reasons for revoking parole. After revocation of parole, a written statement of fact explaining the evidence relied on and the reasons for revoking probation is necessary because no transcript of the proceedings is available to a reviewing court. In Gagnon the United States Supreme Court applied the due process procedures outlined in Morrissey (including providing the probationer with a written statement by the factfinder of the evidence relied on and the reasons for revoking probation) to probation revocations. In Black v. Romano, 471 U.S. 606, 613-15, 105 S.Ct. 2254, 2259, 85 L.Ed.2d 636 (1985), the United States Supreme Court stated that `[t]he written statement required by Gagnon and Morrissey helps to insure accurate factfinding with respect to any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence.' Gagnon and Morrissey require `a written statement,' but they do not specify that this requirement can be fulfilled only by the submission of a separate written order containing the evidence relied upon and the reasons for revoking probation. Black makes it clear that the assurance of accurate factfinding and protection from unjust revocation are the goals of both Gagnon and Morrissey. Our concern is what suffices as a written statement.
"State v. Jaworski, 194 Neb. 645, 234 N.W.2d 221 (1975), cited in In re Interest of Thomas W., 3 Neb.App. 704, 530 N.W.2d 291, 294 (1995), states that `the Morrissey and Gagnon decisions arose in the context of administrative hearings and that the written statement requirement enumerated in those cases does not apply to judicial adult probation revocation proceedings.' The Nebraska court in Jaworski and Thomas also provided the following cites to cases in which other appellate courts have `uniformly held that the written statement requirements of Morrissey and Gagnon are satisfied where oral pronouncements made by the judge at the revocation hearing appear in the trial record on appeal':
"`See, e.g., United States v. Copeland, 20 F.3d 412 (11th Cir.1994); United States v. Gilbert, 990 F.2d 916 (6th Cir.1993); United States v. Barnhart, 980 F.2d 219 (3d Cir.1992); United States v. Copley, 978 F.2d 829 (4th Cir.1992); United States v. Barth, 899 F.2d 199 (2d Cir.1990), cert. denied, *461 498 U.S. 1083, 111 S.Ct. 953, 112 L.Ed.2d 1042 (1991); United States v. Yancey, 827 F.2d 83 (7th Cir.1987), cert. denied, 485 U.S. 967, 108 S.Ct. 1239, 99 L.Ed.2d 437 (1988); Clark v. State, 580 N.E.2d 708 (Ind.App.1991); Southern v. State, 589 So.2d 811 (Ala. Crim.App.1991); State v. Hodges, 798 P.2d 270 (Utah App.1990); People v. Moss, 213 Cal.App.3d 532, 261 Cal. Rptr. 651 (1989); Powell v. State, 745 P.2d 747 (Okla.Crim.App.1987); Soden v. State, 71 Md.App. 1, 523 A.2d 1015 (1987); Pannell v. State, 707 S.W.2d 692 (Tex.App.1986); Saunders v. United States, 508 A.2d 92 (D.C.1986); Rutledge v. State, 263 Ark. 300, 564 S.W.2d 511 (1978). But cf. United States v. Smith, 767 F.2d 521 (8th Cir.1985).'
"Thomas, 530 N.W.2d at 295.4 We acknowledge the split between state and federal jurisdictions concerning the written statement requirement. `We see no reason why transcribed oral findings cannot satisfy the written statement requirement of Morrissey, at least where... we possess a record that is sufficiently complete to allow the parties and us to determine "the evidence relied on and the reasons for revoking probation."' Barth, 899 F.2d at 201 (citing Black v. Romano, 471 U.S. 606, 612, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985)); Copley, 978 F.2d at 831 (`a transcribed oral finding can serve as a "written statement" for due process purposes when the transcript and record compiled before the trial judge enable the reviewing court to determine the basis of the trial court's decision'); Gilbert, 990 F.2d at 917 (`The Federal District Courts are courts of record since all hearings are transcribed verbatim; to require a judge to copy or paraphrase the transcript of his findings in the wake of a revocation hearing would elevate form over substance and do absolutely nothing to further secure the rights of those on supervised release.'); Morishita v. Morris, 702 F.2d 207, 210 (10th Cir.1983) (`written findings are constitutionally required only if the transcript and record before the judge do not enable a reviewing court to determine the basis of the judge's decision to revoke probation'); State v. Wilson, 127 Idaho 506, 903 P.2d 95, 100 (1995) (`district court does not need to enter written findings of fact to justify revocation of probation if it orally explained its reasons and these reasons are part of the record on review. If the reasons given are made part of the record, the probationer's due process rights are not violated.'); State v. Collins, 560 So.2d 836 (La.1990) (`Oral reasons transcribed in the record are sufficient.').
"The committee comments to Rule 27.6(f) state, `Section (f) is included to give a reviewing court a basis for evaluating the revocation hearing and decision.' Because revocation proceedings can be transcribed, the goal of providing a basis for evaluating the revocation hearing and the ultimate decision is accomplished by a sufficient pronouncement on the record without requiring the circuit court to reproduce its ruling in a separate written order. Accordingly, we urge the Alabama Supreme Court to modify its present requirement that a separate written order be entered when a transcript of the revocation hearing is available.
"4 In Southern v. State, 589 So.2d 811, 813 (Ala.Cr.App.1991), this court stated that `technical compliance with Armstrong v. State ... may not be required if a reviewing court can discern the reasons evidenced for the trial court's decision.' Judge Taylor's dissent in Southern, advocating the need for a written *462 statement of facts, became, following the decisions in Armstrong and Wright v. State, 349 So.2d 124 (Ala.Cr.App.1977), the precedent followed by this court."
707 So.2d at 297-99. See also Bauer v. State, 891 So.2d 1004 (Ala.Crim.App.2004).
At oral argument the State explained its position: Rule 27.6(f) should be interpreted to mean that where, as in this case, the trial court affirmatively identifies the testimony of a single witness detailing a single offense as the evidence it relied on in revoking probation, "substantiating" the details of the single offense contained in the delinquency report, and the trial court states as its reason for revoking probation that the defendant has failed to refrain from illegal activity, which activity the record definitively and readily identifies as the commission of a specific criminal offense, the Court of Criminal Appeals should be allowed to look to that compact and unequivocal record to assess whether the due-process requirements of Gagnon and Morrissey have been complied with. We agree that Rule 27.6(f) should control and that it should be so interpreted.
The record available to the Court of Criminal Appeals in this case consists essentially of the following: the probation officer's delinquency report charging a single violation of probation, by virtue of the alleged commission of the new offense of robbery in the first degree; the trial court's December 9, 2003, entry on the case action summary sheet memorializing McCoo's appearance before the court for a "delinquency hearing" and the fact that he had been advised that he was charged with violating his probation by committing the new offense of robbery in the first degree; the five and one-half page transcript of the revocation hearing, at which Det. Favor was the only witness; and the trial court's written probation-revocation order. We believe the Court of Criminal Appeals should have the discretion to review such a minimal and unambiguous record to determine if the trial court's written statement and its statement for the record, read in the context of that record, unmistakenly declare the evidence relied upon and its reason or reasons for revoking probation.
It follows that the requirement of Wyatt and its associated cases  that the trial court enter a written order stating its reasons for the revocation and the evidence relied upon regardless of the state of the record  is no longer applicable. Henceforth, the Court of Criminal Appeals may determine, upon a review of the record, whether the requisite Rule 27.6(f) statements are presented by that record. Thus, the Court of Criminal Appeals may examine the record and conclude that "oral findings, if recorded or transcribed, can satisfy the requirements of Morrissey when those findings create a record sufficiently complete to advise the parties and the reviewing court of the reasons for the revocation of supervised release and the evidence the decision maker relied upon." Copeland, 20 F.3d at 414.
We hasten to note that our holding in this case does not diminish the duty of the trial court to take some affirmative action, either by a statement recorded in the transcript or by written order, to state its reasons for revoking probation, with appropriate reference to the evidence supporting those reasons. The requirements of Wyatt will still be fully applicable in those situations where the record, for lack of transcription of the revocation hearing or for some other reason, fails to clearly and unambiguously set forth the reasons for the revocation and the evidence that supported those reasons. Thus, the requirements of Wyatt are fully applicable to the trial court's order of revocation where the record fails to comply with Rule *463 27.6(f). Accordingly, we reverse the order remanding this case to the trial court and we remand the cause to the Court of Criminal Appeals for it to examine the record and determine whether the requirements of Rule 27.6(f) and constitutional due process have been met. Because of this disposition, we decline to address whether the harmless-error rule should apply to an alleged violation of a due-process right.
In conclusion, it is appropriate to note that in reversing the order of the Court of Criminal Appeals we are simply, albeit belatedly, responding to its several well-reasoned opinions requesting that we revisit Wyatt and adopt an approach more consonant with Rule 27.6(f) and the principles of Gagnon and Morrissey. Thus, in essence, we are reversing a judgment of this Court, not the Court of Criminal Appeals.
REVERSED AND REMANDED.
NABERS, C.J., and STUART, BOLIN, and PARKER, JJ., concur.
SEE and LYONS, JJ., concur in part and concur in the result.
SMITH, J., concurs in the result.
WOODALL, J., dissents.
LYONS, Justice (concurring in part and concurring in the result).
With the exception of one minor aspect of that portion of the main opinion dealing with the State's right to petition for a writ of certiorari at this stage of the proceedings, I concur fully.
The main opinion rejects Bishop v. State, 608 So.2d 345 (Ala.1992), as support for disregarding the final-decision requirement. I find similarity between the circumstance presented here and that presented in Bishop.
When a defendant appeals to the Court of Criminal Appeals and that court orders a remand for further proceedings in the trial court based on the trial court's failure to comply with a procedure the State contends is not required and if the State is right the judgment of the trial court is due to be affirmed, the State is entitled to petition for the writ of certiorari. Bishop v. State. When a defendant appeals to the Court of Criminal Appeals and that court affirms the conviction but also orders a remand for further proceedings in the trial court regarding the sentence, the defendant is not at that point entitled to petition for the writ of certiorari. This result obtains notwithstanding the defendant's contention that the Court of Criminal Appeals erred in affirming the conviction and, if the defendant is correct, any sentencing error would become moot. Ex parte Pierce, 576 So.2d 258 (Ala.1991).
These results on the surface appear at least inconsistent, if not illogical. However, the difference lies in the difficulty inherent in the State's ability in a criminal proceeding to challenge a procedural ruling as unnecessary when subsequent proceedings bear out the State's contention. For example, in Bishop, the State contended that a simple reading of the petition for postconviction relief showed that, assuming every allegation of the petition to be true, it was obviously without merit or was precluded and the trial court was authorized to dismiss the petition summarily without requiring a response from the district attorney. If the State's view of the merits is accurate, on remand the trial court will again dismiss the petition and, upon appeal, the Court of Criminal Appeals will affirm. At that juncture, the State would have no standing to petition for certiorari review of the remand ordered on the first appeal. In the second example, the question whether the Court of Criminal Appeals was wrong in affirming *464 the conviction will be available for review on petition for a writ of certiorari to this Court by the defendant, regardless of what happens in further proceedings as to the sentence.
The State faces the same dilemma here it faced in Bishop. If the State's view of the merits is accurate and the additional procedural step is, therefore, not necessary, on remand the trial court will again revoke McCoo's probation and, upon appeal from that revocation, the Court of Criminal Appeals will affirm. At that juncture, the State would have no standing to petition for certiorari review of the remand ordered on the first appeal.
SEE, J., concurs.
WOODALL, Justice (dissenting).
Today this Court has improperly intruded into a matter within the exclusive jurisdiction of the Court of Criminal Appeals. Therefore, I respectfully dissent.
"The Court of Criminal Appeals [has] exclusive appellate jurisdiction of all ... felonies." § 12-3-9, Ala.Code 1975. Therefore, as the majority recognizes, Ala. R.App. P. 39 requires a final decision by the Court of Criminal Appeals before the party who has not prevailed can seek certiorari review in this Court. Consequently, because the Court of Criminal Appeals has rendered no final decision in this case, it is my opinion that the writ of certiorari must be quashed.
It is true that, as the majority states, "this Court has long recognized an exception to the mootness doctrine in a situation where the controversy involves an important issue that is `capable of repetition but evading review.'" 921 So.2d at 458 (emphasis added). However, in this case, failing to acknowledge the limits of its own jurisdiction, the Court has transformed this exception to the mootness doctrine into an exception to the final-judgment requirement, citing no authority supporting its action. While the majority appears motivated by its fear that it will never have an opportunity to revisit Wyatt v. State, 608 So.2d 762 (Ala.1992), that fear is unfounded.
Unlike the majority, I believe that the Court of Criminal Appeals exists to review, not simply to affirm, judgments of the trial courts. One day, after a Wyatt remand, the Court of Criminal Appeals will reverse a trial court's revocation of probation. At that time, the State, as the party who has not prevailed, can, if it chooses to do so, apply for a rehearing before the Court of Criminal Appeals. See Ala. R.App. P. 40(a). If the Court of Criminal Appeals overrules its application for rehearing, the State can, if it chooses to do so, petition this Court for certiorari review. If this Court, properly exercising its jurisdiction, decides to grant certiorari review, it can, properly applying the capable-of-repetition-but-evading-review exception to the mootness doctrine, choose to reconsider Wyatt. Until then, Wyatt must remain the law of this State.
NOTES
[1] See § 15-18-8, Ala.Code 1975, the Alabama Split Sentence Act.
[2] See also Ex parte Save Our Streams, Inc., 541 So.2d 549 (Ala.1989)(holding that this Court will consider a petition for a writ of certiorari only after the court of appeals has overruled the application for rehearing on the point challenged in the petition, implying that the decision by the Court of Criminal Appeals must be final before certiorari review would be available) (Rule 39 has since been amended to eliminate the requirement that an application for rehearing be filed for petitions seeking a review of a decision of the Court of Civil Appeals), and Ex parte Blakey, 240 Ala. 517, 199 So. 857 (1941)(holding that the trial court's order that the petitioner answer questions propounded to him at a commission hearing was a final judgment reviewable by the Supreme Court by common-law certiorari).
[3] Rule 39(c), Ala. R.App. P., was amended effective May 19, 2000, to remove the provision that provided that a petition for a writ of certiorari to the Alabama Supreme Court in a case in which the death penalty was imposed would be granted as a matter of right. With that amendment, review of death-penalty cases is at the discretion of the Supreme Court.
[4] Richardson v. State, 911 So.2d 1114 (Ala. Crim.App.2004); K.W.J. v. State, 905 So.2d 17 (Ala.Crim.App.2004); McGhee v. State, 912 So.2d 534 (Ala.Crim.App.2004); Boles v. State, 922 So.2d 135 (Ala.Crim.App.2004); McCoo, supra; Williams v. State, 895 So.2d 1012 (Ala.Crim.App.2004); Salter v. State, 895 So.2d 394 (Ala.Crim.App.2004); Taylor v. State, 894 So.2d 806 (Ala.Crim.App.2004); Stinson v. State, 901 So.2d 748 (Ala.Crim.App. 2004); Kinchlow v. State, 891 So.2d 436 (Ala. Crim.App.2004); Williams v. State, 891 So.2d 1001 (Ala.Crim.App.2004); Bauer v. State, 891 So.2d 1004 (Ala.Crim.App.2004); Cherry v. State, 890 So.2d 1106 (Ala.Crim.App.2004); Oden v. State, 890 So.2d 1104 (Ala.Crim.App. 2004); Rander v. State, 882 So.2d 369 (Ala. Crim.App.2003); Beard v. State, 871 So.2d 866 (Ala.Crim.App.2003); Beckham v. State, 872 So.2d 208 (Ala.Crim.App.2003); Smith v. State, 872 So.2d 216 (Ala.Crim.App.2003); Pate v. State, 882 So.2d 372 (Ala.Crim.App. 2003); Davis v. State, 861 So.2d 23, (Ala. Crim.App.2003); Cain v. State, 861 So.2d 424 (Ala.Crim.App.2003); Murphy v. State, 856 So.2d 949 (Ala.Crim.App.2003); McNealy v. State, 855 So.2d 592 (Ala.Crim.App.2003); Smith v. State, 857 So.2d 838 (Ala.Crim.App. 2002); and Attaway v. State, 854 So.2d 1211 (Ala.Crim.App.2002).