PARKER, Justice.
Aliant Bank (“Aliant”) appeals the entry of an injunction against it by the Shelby Circuit Court (“the circuit court”) enjoining Aliant from interfering with a contract for the sale of real property between Kimberly Carter and Kerry Carter, on the one hand, and Gregory R. Nunley and Robyn C. Nunley, on the other.

Facts and Procedural History

The Carters own, as joint tenants, a piece of real property located in Shelby County (“the property”). The Carters used the property to secure a mortgage from Mortgage Electronic Registration Systems, Inc. (“MERS”); the approximate payoff amount of the mortgage during the time relevant to this appeal was $372,277.93. In addition to the MERS mortgage, three creditors secured judgments against Kerry Carter in the total approximate amount of $1.5 million. In order to secure their judgments against Kerry Carter, the judgment creditors obtained liens against the property in the amounts of $287,244.36, $980,088.41, and $245,575.42 on the dates of December 15, 2010, April 7, 2011, and April 26, 2011, respectively. In 2011, Aliant obtained a judgment against Kerry Carter in the amount of $789,738.08. On or about November 28, 2011, Aliant recorded its judgment against Kerry Carter in the Shelby County Probate Court pursuant to § 6-9-210, Ala.Code 1975.[1]
On August 21, 2014, the Carters entered into a contract with the Nunleys for the *983 sale of the property for a purchase price of $438,900 (“the contract”). At the time the Carters entered into the contract, the judgment liens against the property had not been satisfied. The preliminary settlement statement for the sale of the property indicates that $372,277.93 of the sale proceeds would be used to pay off the outstanding mortgage held by MERS on the property. The preliminary settlement statement also indicates that, after the mortgage had been satisfied and closing costs paid, the net proceeds of the sale would be $27,129.14, which was to be split equally between the Carters as joint tenants. Therefore, Kerry Carter, against whom the judgment liens were entered, would only receive $13,564.57 as a result of the proposed sale of the property to the Nunleys.
The first judgment creditor agreed to release its judgment lien on the property in exchange for the $13,564.57 due Kerry Carter from the sale proceeds. Although the record does not indicate that the second or third judgment creditor agreed to release its judgment lien against the property, the record is clear that Aliant refused to release its judgment lien against the property. Apparently, Aliarit’s refusal to execute a release of its judgment lien inhibited the closing of the contract.
On September. 14,. 2014, the Carters sued Aliant, alleging that Aliant had intentionally and maliciously refused to execute a partial release of the property “in order to prohibit [Kerry] Carter from being able to fulfill his obligations under the purchase contract even though all profits due Kerry Carter are being disgorged and paid to the appropriate judgment creditor, [the first judgment creditor].”[2] The Carters requested that the. property be released from Aliantfs judgment lien against it. The Carters also requested that the circuit court enter a temporary restraining order; the Carters did not explain, what they sought to temporarily restrain pending the outcome of their action.
On October 3, 2014, Aliant filed an answer to the Carters’ complaint and a response to the Carters’ requést for a temporary restraining order. In its resporise to the Carters’ request for a temporary restraining order, Aliant argued that it was not wrongfully interfering with the contract because it held a valid judgment lien and further that there existed “no mechanism for a judgment lien to be avoided unless it is released, satisfied, or extinguished due to the foreclosure of a prior lien, or if it is subject to ‘lien stripping’ under 11 U.S.C. §§ 506 and 1322 of the Bankruptcy Code.”
On October 8, 2014, following an ore tenus hearing, the circuit court entered an order, which states, in pertinent part:
“Accordingly, this Court hereby Orders that Aliant Bank shall be enjoined and restrained from interfering with the sale of the subject property,-Highway 13, Helena, Alabama , 35080, from Kimberly and Kerry Carter to Gregory and Robyn Nunley for the purchase price of $438,900.00 as set out in the real estate sales contract introduced as Plaintiffs Exhibit 1. In accordance with the settlement statement introduced into evidence as Plaintiffs Exhibit 2, the Court understands that the proration’s [sic] on said settlement statement -will vary as being governed by the date of closing. ■ The closing attorney, Clayton T. Sweeney, after the payment of the *984 first- mortgage and -all closing costs and expenses as shown on the settlement statement entered into evidence as Plaintiffs Exhibit 2 is ordered to pay to [the first judgment creditor] any and all .proceeds due to be paid to Kerry Carter as [it is] the first judgment creditor. Further, this Court orders Clayton T. Sweeney to pay into this Court any and all proceeds due to Kimberly Carter. This Court hereby orders that all judgments of [the .second judgment creditor], [the third judgment creditor,] and Aliant Bank ... shall herein be transferred from the subject property and attach to the proceeds to the extent that such judgment creditors prove their entitlement. Kimberly Carter shall also be entitled to establish her claim to these proceeds. The payment of the funds into the Court shall act as the security for the issuance of the temporary restraining order.”
On October 10, 2014, Aliant petitioned this Court for a writ of mandamus directing the circuit court to vacate its October 8, 2014, order.- On February 6, 2015, this Court ordered that Aliant’s petition for a writ of mandamus be treated as a timely notice of appeal. After this Court issued the above order, Aliant filed its appellant’s brief on April 21, 2015.- Instead of filing an appellee’s brief, the Carters, on May 21, 2015, filed a motion to dismiss Aliant’s appeal as moot, alleging that the property had been foreclosed upon by MERS; the Carters did not present this Court with any evidence indicating that MERS had, in fact, foreclosed upon the property. On May 26, 2015, Aliant filed a memorandum in opposition to the Carters’ motion to dismiss its appeal. On May 28, 2015, this Court issued a show-cause order directing Aliant to demonstrate why the appeal was not moot. On June 8, 2015, Aliant filed a memorándum in response to the show-cause order that largely mirrored the arguments raised in its May 26, 2015, memorandum.
On November 3, 2015, this Court ordered the Carters to file evidence with this Court in support of its motion to dismiss the appeal as moot. See South Alabama Gas Dist. v. Knight, 138 So.3d 971, 976 (Ala.2013)(“ ‘[B]ecause mootness is a jurisdictional issue, we may receive facts relevant to that issue; otherwise there would be no way to find out if an appeal has become moot.’ Clark v. K-Mart Corp., 979 F.2d 965, 967 (3d Cir.1992). See also Jeffrey C. Dobbins, New Evidence on Appeal, 96 Minn. L.Rev.2016, 2030 (2012) (‘[A]llegations that a case is moot on appeal will often require an appellate court to consider what is technically new evidence.’).”). On November 9, 2015, the Carters presented this Court with an auctioneer’s deed indicating that the Carters had defaulted on the mortgage, that MERS had foreclosed on the property, and that MERS had sold the property to Federal National Mortgage Association (“FNMA”) for $389,752.21. Aliant filed a response on November 10, 2015. From the evidence before us, it is clear that the Carters no longer own the property.

Discussion

In their motion to dismiss Aliant’s appeal as moot, the Carters essentially argue that their claim of intentional interference with a contract against Aliant is now moot because, they say, the contract “is now legally impossible as a result of the foreclosure. The Carters no longer have legal title to the subject residence to convey.” Accordingly, the Carters argue that’ the injunctive relief they requested is no longer attainable and that, consequently, the case is no longer justiciable. We agree.
As a result of the foreclosure upon the property, the injunctive relief ordered by *985 the circuit court can have no effect. In Knight, this Court stated:
“When an action becomes moot during its pendency, the court lacks power to further adjudicate the matter.
“ ‘ “The test for mootness is commonly stated as whether the court’s action on the merits ivould affect the rights of the parties.” Crawford v. State, 153 S.W.3d 497, 501 (Tex.App.2004) (citing VE Corp. v. Ernst & Young, 860 S.W.2d 83, 84 (Tex.1993)). “A case becomes moot if at any stage there ceases to be an actual controversy between the parties.” Id. (emphasis added) (citing National Collegiate Athletic Ass’n v. Jones, 1 S.W.3d 83, 86 (Tex.1999)).’
“Chapman v. Gooden, 974 So.2d 972, 983 (Ala.2007) (first emphasis added). See also Steffel v. Thompson, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (‘[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.’).
[[Image here]]
“Events occurring subsequent to the entry or denial of an injunction in the trial court may properly be considered by this Court to determine whether a cause, justiciable at the time.the injunction order is entered, has been rendered moot on appeal. ‘[I]t is the duty of an appellate court to consider lack of subject matter jurisdiction....’ Ex parte Smith, 438 So.2d 766, 768 (Ala.1983). ‘[Jjusticiability is jurisdictional.’ Ex parte State ex ret James, 711 So.2d 952, 960 n. 2 (Ala.1998). A justiciable controversy is one that ‘is definite and concrete, touching the legal relations of the parties in adverse legal interest, and it must be a real and substantial controversy admitting of specific relief through a decree.’ Copeland v. Jefferson Cnty., 284 Ala. 558, 561, 226 So.2d 385, 387 (1969). A case lacking ripeness has yet to come into existence;3 a moot case has died.4 Between the two lies the realm of justiciability, gee 13B Charles Alan Wright et al., Federal Practice and Procedure § 3533 (3d ed. 2008) (‘It is not enough that the initial requirements of standing and ripeness have been- satisfied; the suit must' remain alive throughout- the course of litigation, to the moment of final appellate disposition.’).1
[[Image here]]
“ 3Ripeness is ‘[t]he state of a dispute that has reached, but has not passed, the point when the facts have developed sufficiently to, permit an intelligent and useful decision to be made.’ Black’s Law Dictionary 1442 (9th ed.2009).
“ 4A mootness analysis ‘concentrate^] attention on the peculiar problems of a suit’s déath, rather than its birth.’ 13B Charles Alan ■ Wright et al., Federal Practice and Procedure § 3533.1 (3d ed.2008).”-
138 So.3d at 974-76.
In the'present case, there is no longer an actual controversy to be decided by this Court. In their complaint against Aliant, the Carters alleged that Aliant had intentionally interfered with the contract. The circuit court ordered “that Aliant' Bank shall be enjoined and restrained from interfering with the sale of the ... property ...' from Kimberly and Kerry Carter to Gregory and Robyn Nunley for the purchase price of $438,900.00 as set out in the ... contract introduced as Plaintiffs Exhibit 1.” (Emphasis added.) It is clear that the circuit court enjoined Aliant from interfering with the contract. The circuit court did not broadly order that Aliant was permanently enjoined from- interfering with any contract between the Carters and the Nunleys that may be entered into in the future. Additionally, the part of the *986 circuit court’s order concerning the potential proceeds of the pending sale was dependent upon the Garters’ selling the property to the Nunleys. The Carters, however, never sold the property to the Nunleys. Ipstead, while Aliant’s appeal to this Court was pending, the property was foreclosed upon by MERS and then was sold to FNMA at an auction. As a result, the circuit court’s order enjoining Aliant from interfering with the contract is now moot; events occurring after the order was entered have eliminated any potential controversy arising from that order. Thus, we do not reach Aliant’s arguments on the merits.
Aliant raises numerous arguments in its response to the Carters’ motion to dismiss Aliant’s appeal as moot. First, Aliant argues that, even though MERS foreclosed upon the property and the property was sold to FNMA, “the Carters still have the power to transfer their home to the Nunleys.” Aliant reasons that the Carters have a right to redeem the property within one year from the date of the foreclosure and that, if they redeem the property, they could then sell the property to the Nunleys free of Aliant’s judgment lien.
Aliant’s argument is not persuasive, because it ignores the fact that the circuit court’s order concerned only the contract, i.e., the sales contract at issue in the present case. As stated above, the circuit court did not permanently enjoin Aliant from ever enforcing its judgment lien against the property. Now that the contract is not capable of performance, the entirety of the circuit court’s order is moot. Assuming Aliant is correct in stating that the Carters could redeem the property and then sell it to the Nunleys, Aliant would not be enjoined by the circuit court’s October 8, 2014, order from enforcing its judgment hen against the property at some future date because the circuit court’s order enjoined Aliant only from interfering with the contract. This situation is specifically addressed in § 6-5-248(d), Ala.Code 1975, which states:
“When any debtor, mortgagor, their transferees, their respective spouses, children, heirs, or devisees redeem, all recorded judgments, recorded mortgages, and recorded liens in existence at the time of the sale, are revived against the real estate redeemed and against the redeeming party and further redemption by some party other than the mortgagor or debtor under this article is precluded.”
Should the Carters redeem the property, Aliant’s lien against the property would be revived and, as explained above, would not be subject to the circuit court’s October 8, 2014, order.
Next, Aliant argues that its appeal is not moot because, it argues, the issue whether it was wrongfully enjoined or restrained must be decided. This is significant because “[a] party that is wrongfully enjoined or restrained has ‘a cause of action for recovery under the surety bonds posted in accordance with Rule 65(c)[, Ala. R. Civ. P].[3]’ Talladega Little League, Inc. v. Anderson, 577 So.2d *987 1293, 1296 (Ala.1991).” Ex parte Waterjet Sys., Inc., 758 So.2d 505, 510 (Ala.1999). Aliant’s argument is based on the premise that the circuit court entered a temporary restraining order against Aliant; however, that premise is incorrect. Although the circuit court purported to enter a temporary restraining order against Aliant, the circuit court actually entered a permanent injunction against Aliant.
This Court has stated that “[i]t is well settled that the purpose of granting a temporary restraining order or preliminary injunction is to maintain the status quo until the merits of the case can be determined. Hamilton v. City of Birmingham, 28 Ala.App. 534, 189 So. 776 (1939).” Ex parte Health Care Mgmt. Grp. of Camden, Inc., 522 So.2d 280, 282 (Ala.1988). The Carters’ complaint consists of one allegation of intentional interference with a contract against Aliant. The sole issue to be determined was whether Aliant intentionally interfered with the contract by refusing to partially release its judgment lien against the property. The circuit court’s order decided that issue by determining that Aliant had intentionally interfered with the contract and by enjoining Aliant from further interfering with the contract. The only relief requested by the Carters in their complaint was entirely, granted in the circuit court’s October 8, 2014, order.
Accordingly, the circuit court’s order did not issue a temporary restraining order preserving the status quo until the merits of the case could be decided. Instead, the circuit court decided the merits of the case and entered a permanent injunction against Aliant; the circuit court’s order is a final judgment, which Aliant challenges. Accordingly, Rule 65(c), Ala. R. Civ. P., and its requirement that a bond be provided in order to issue a restraining order or a preliminary injunction does not apply. Aliant’s argument under Rule 65 does not convince this Court that its appeal is not moot. - •
Moreover, we note that a bond was never actually issuéd in this case. The circuit court’s ’ order required certain proceeds of the pending sale to be paid into the circuit court, which would then “act as the security for the issuance of the temporary restraining order.” However, as stated above, the pending sale never came to fruition; thus, no proceeds were paid into the circuit court as security for the issuance of the “temporary restraining order.”
Next, Aliant argues that its appeal is not moot because “the question whether the [circuit] court erred in stripping Aliant’s judgment lien from the property must be decided because that issue determines whether Aliant may redeem the property from the ... foreclosure sale.” ■ Aliant’s argument is based on the following portion of the circuit court’s order: “This Court hereby Orders that all judgments of [the second judgment creditor], [the third judgment creditor,] and Aliant Bank ... shall herein be transferred from the subject property and attach to the proceeds to the extent that such judgment creditors prove their entitlement.” Aliant argues that the above portion of the circuit court’s order “stripped” its judgment lien against the property. , .
First, as explained above, the entirety of the circuit court’s order is moot and cannot be given effect because the contract has been rendered incapable of being fulfilled. Accordingly, the circuit court’s order does not “strip” Aliant of its judgment lien against the property.[4] Thus, as stated above, we do not reach Aliant’s arguments on the merits bf this appeal concerning *988 whether “Alabama law provides [a] procedure to ‘avoid’ a valid judgment lien.” Second, Aliant has misinterpreted the circuit court’s judgment. This portion of the circuit court’s order applied only if the pending sale of the property occurred. The circuit court ordered that certain proceeds from the pending sale of the property would be páid into the circuit court and that the various judgment creditors’ liens against the property would be transferred from the property to the proceeds paid into the circuit court. However, the Carters never sold the property to the Nun-leys; thus, no proceeds from the sale were ever paid into the circuit court. As a result, the judgment' creditors’ liens did not transfer from the property. Therefore, Aliant’s argunaent does not demonstrate that its appeal is not moot.
Lastly, Aliant argues that its appeal is not moot because “the question of whether a court may-order property sold free and clear of judgment liens must be decided because that issue is ‘capable of repetition, yet evading review.’” Aliant’s argument is unconvincing.
Aliant argues that the challenged action was too short in duration to be fully litigated before its cessation or expiration. In McCoo v. State, 921 So.2d 450, 458 (Ala.2005), this Court stated:
“The capable-of-repetition-but-evading-review exception has been applied in contexts that generally involve a significant issue that cannot be addressed by a reviewing, court because. of some intervening factual circumstance, most often that the issue will be resolved by the passage of a relatively brief period of time. See, e.g., Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973)(involving the termination of a pregnancy); Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969)(involving challenges to election procedures after the completion of the election); and [State ex rel.] Kernells [v. Ezell, 291 Ala. 440, 282 So.2d 266, 270 (1973) ] (same).” -
Aliant also directs this Court’s attention to Turner v. Rogers, 564 U.S. 431, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011), in which the United States Supreme Court held- that prison terms of one to two years did not allow enough time for the matters concerning the imprisonment to be fully litigated.
The present case is not the kind of case that fits within the capable-of-repetition-but-evading-review exception. The.cases mentioned in McCoo and Turner as examples of cases that do fit within the capable-of-repetition-but-evading-review exception involve situations that necessarily end within a brief passage of time (e.g., pregnancy, elections, and a prison term of two years or less). A claim alleging intentional interference with a contract is different from matters such as pregnancy, elections, and prison terms of less than two years because a claim alleging intentional interference with a contract does not necessarily end within a brief passage of time. The only reason review was cut short in this case is because MERS happened to have a claim on the property senior to Aliant’s judgment lien. Once MERS foreclosed on the property, the circuit court’s order enjoining Aliant from interfering with the contract became moot because the contract had become impossible to perform. Aliant argues that foreclosures in cases such as the present case are “almost guaranteed” and that such foreclosures would never allow enough' time for appellate review. However, Aliant has not presented any evidence or supporting authority indicating that foreclosures are “almost guaranteed” in cases such as this one. For instance, it is possible that in a future case in which Aliant is sued for allegedly .intentionally interfering with a contract for seeking to enforce its judgment lien that Aliant’s judgment lien would be the most senior lien, and no foreclosure would moot Ali- *989 ant’s-appeal. It could also be that there would be no foreclosure at all. In short, cases involving judgment creditors that have been sued for intentionally interfering with a contract for the sale of property against which they have filed a judgment lien are not the kind of cases that are necessarily mooted by a brief passage of time.
This is a peculiar case in, which a judg-r ment creditor was permanently enjoined from interfering with a contract for the sale of property. Normally, a party that has been permanently enjoined from interfering with a contract would have ample time to seek appellate review. This case had the additional wrinkle of a foreclosure, which made the contract that was the basis of the action impossible to perform. As a result, the circuit court’s order enjoining Aliant became moot because there was no longer a justiciable controversy. However, a claim alleging intentional interference with a contract does not typically become moot within a brief passage of time. Ali-ant has-failed to deinonstrate that this case fits within the capable-of-repetition-but-evading-review exception to the mootness doctrine.

Conclusion

Wé conclude that there is no longer a justiciable controversy between Aliant and the Carters, a fact that renders the case moot. Therefore, this Court does not have jurisdiction over Aliant’s appeal; thus, we dismiss Aliant’s appeal.
APPEAL DISMISSED.
MOORE, C.J., and STUART, BOLIN, MURDOCK, MAIN, and WISE, JJ., concur.
- SHAW and BRYAN, JJ., concur in the result. -

. Section 6-9-210 provides:
"The owner of any judgment entered in any court of this state or of the United States held in this state may file in the office of the judge of probate of any county of this state a certificate of the clerk or register of the court by which the judgment was entered, which certificate shall show the style of the court which entered the judgment, the amount and date thereof, the amount of costs, the names of all parties thereto and the name of the plaintiffs attorney and shall be registered by the judge of probate in a book to be kept by him for that purpose, which said register shall also show the date of the filing of the judgment. Said judge shall make a proper index to said book, which shall also show under the proper letter or letters of the alphabet the names of each and every defendant to said judgment, and such judgments shall be recorded in chronological order of the filing of such judgments. Such certificate shall also show the address of each defendant or respondent, as shown in the court proceedings.”

. It appears that the Carters were asserting a claim of intentional interference with a contract. See Century 21 Academy Realty, Inc. v. Breland, 571 So.2d 296, 297 (Ala.1990) (setting forth the elements of a cause of action for intentional interference with contractual relations).

. Rule 65(c), Ala. R. Civ. P., states:
“No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorney fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained; provided, however, no such security shall be required of the State of Alabama or of an officer or agency thereof, and provided further, in the discretion of the court, no such security may be required in domestic relations cases.”

. We offer no opinión as to the effect of MERS’s foreclosure and sale of the property on Aliant's judgment lien against the property-